UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Taylor Weisleder and Michelle Weisleder, <br><br> Plaintiffs, <br><br> vs. <br><br> Kenvue Brands, LLC f/k/a Johnson & Johnson Consumer, Inc., ABC Corporations 1-5, XYZ Partnerships 1-5, and John Does 1-5, <br><br> Defendants. | Case No.: <br><br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiffs, Taylor Weisleder and Michelle Weisleder, ("hereinafter referred to as "Plaintiffs") by and through the undersigned counsel, bring this Complaint setting forth claims against Defendants, and hereby allege as follows:

**THE PARTIES, JURISDICTION & VENUE**

1. This is a lawsuit by Plaintiffs who purchased Neutrogena Sunscreen Products manufactured, sold and/or distributed by Defendants. Defendants, at all times referenced herein and thereafter, distributes, markets and sells several over-the-counter Sunscreen Products under their brand name "Neutrogena." Several of Defendant's Neutrogena Sunscreen Products (identified below) have been independently tested and shown to be adulterated with unsafe and/or unwanted levels of benzene, a known human carcinogen. The presence of unsafe and/or unwanted levels of benzene in Defendants' Neutrogena Sunscreen Products was not disclosed in the products' label, in violation of state and federal law. Plaintiffs suffered personal injuries and damages due to Defendants misconduct (as set forth

below) and seek restitution in an amount to be determined by a jury as demanded herein. Plaintiffs allege the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiffs further believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

2. Plaintiffs, during all relevant times referenced herein, were citizens of the State of Florida and residents of the County Palm Beach, Florida.

3. Defendant, Kenvue Brands, LLC formally known as Johnson & Johnson Consumer, Inc. (hereinafter "KENVUE"), is a Delaware corporation with a principal place of business at 199 Grandview Rd, Skillman, NJ 08558 and is, and during all relevant times referenced in this complaint was, the successor in interest, assignee, authorized agent and/or otherwise responsible party for the manufacturing, distribution and/or sale of the adulterated sunscreens alleged herein. KENVUE was authorized to do business in Florida during the relevant times alleged herein and was the successor in interest, subsidiary, assignee, authorized agent or otherwise responsible party of one or more of the Johnson & Johnson, Inc. conglomerate of companies (hereinafter "J&J"). As one of the world's leading brands of skin care, hair care, and cosmetics, KENVUE distributed its products, including the adulterated sunscreen products alleged herein, throughout the United States. The line of sunscreen products, including the adulterated sunscreen purchased by Plaintiffs, are available at retail stores throughout Florida and the United States.

4. Defendants, ABC Corporations, 1-5, XYZ Partnerships 1-5, and John Does 1-5, are

Defendants whose identity is presently unknown to Plaintiffs who manufactured, distributed and/or sold the adulterated sunscreen referenced herein that was purchased by Plaintiffs, and were available at retail stores throughout Florida and the United States.

5. This Court is authorized to exercise personal jurisdiction over Defendants, KENVUE, ABC Corporations, 1-5, XYZ Partnerships 1-5, and John Does 1-5, because (i) the causes of action stated herein arise out of or relate to the purposeful contacts by said Defendants with Plaintiffs and the State of Florida, (ii) Defendants' contacts with Florida are substantial and not isolated, (iii) Defendants market, manufacture, conduct and do business in Florida, an (iv) the exercise of personal jurisdiction over Defendants comports with due process.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because the Plaintiffs citizens of a different state than Defendants and the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00.

7. Venue is proper in this Court because Palm Beach County, Florida is where Plaintiffs purchased and used Defendants' defective products and thus where a substantial part of the events giving rise to these claims occurred, and where the Defendants transact business. The wrongful acts that are the subject of this Complaint and that give to the causes of action asserted herein occurred in the County of Palm Beach, State of Florida.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8. Plaintiffs brings this cause of action for a serious and life-altering physical disease sustained by Plaintiff, Taylor Weisleder, while using certain J&J and Neutrogena

sunscreen products containing benzene and using them as intended and, in a manner, reasonably foreseeable to Defendants, in and around Palm Beach, Florida. As a result, Plaintiff, Taylor Weisleder, was diagnosed and received treatment for Multiple Myeloma (MML) on or about April 30, 2021, in the Palm Beach County area.

9. Plaintiff, Taylor Weisleder, while residing in Palm Beach County, Florida, regularly purchased and used various J&J, Neutrogena Sunscreen Products including, but not limited to, Neutrogena Beach Defense Aerosol Sunscreen, and Neutrogena Ultra Sheer Aerosol Sunscreen. He used these products regularly and typically on a weekly basis near their home, the beach, playing golf and in daily outside activities living in Florida for one or more years until discovery of the adulterated sunscreen products contamination with benzene.

10. Plaintiff, Taylor Weisleder, was diagnosed with MML, at the Cancer Center for South Florida, in Lake Worth, Florida. He suffered multiple chemotherapy treatments and their side effects. He continues to receive follow-up care.

11. Plaintiff, Taylor Weisleder, was exposed to a known carcinogen, benzene, contained in Defendants' Neutrogena Sunscreen Products. The case arises due to the negligence of Defendants in the development, manufacturing, packaging, labeling, distributing, and marketing of certain Sunscreen Products specified below. Several of Defendants' Neutrogena sunscreen products (identified below), have been independently tested and shown to be adulterated with benzene, a known human carcinogen. The presence of benzene in J&J's Neutrogena sunscreen products was not disclosed on the product labeling.

12. Defendants designed, manufactured, marketed, distributed, and sold Neutrogena Sunscreen.

13. Defendants' conduct was willful, wanton, reckless and/or grossly negligent.

14. As a direct and proximate result of the conduct of Defendants as set forth in his Complaint, Plaintiff, Taylor Weisleder, sustained injuries and damages including, but not limited to undergoing chemotherapy treatments; past and future pain and anguish, both in mind and in body; permanent diminishment of his ability to participate in and enjoy the affairs of life; medical bills associated with the replacement procedure and recovery therefrom; future medical expenses; loss of enjoyment of life; disfigurement; physical impairment, and other injuries not fully known at this time.

15. The injuries suffered by Plaintiff, Taylor Weisleder, were both factually and proximately caused by the Defendants' defective and unreasonably dangerous sunscreen.

16. Plaintiff, Taylor Weisleder, is entitled to recover for all economic and special damages incurred, including, but not limited to, damages for subsequent surgeries, rehabilitative services, follow up doctor visits and all expenditures incurred as a result of the additional operations and follow-up procedures.

17. Plaintiff, Taylor Weisleder, further shows that he is entitled to recover for all noneconomic and compensatory damages allowed by law, including, but not limited to, pain and suffering for all pain and suffering that he has incurred as a result of the defective product, the follow-up treatments, rehabilitation, and constant pain that occurs as a result of the failure of the product.

18. Plaintiffs purchased the Defendants' Neutrogena sunscreen products from Costco, Sam's Club, Target, and other local retailers in and around the Palm Beach, Florida.

## BENZENE IN SUNSCREEN

19. Benzene isused primarily as a solvent in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline. The major United States source of benzene is petroleum. The health hazards of benzene have been recognized for over one hundred years. According to the National Toxicology Program ("NTP"), benzene is "known to be a human carcinogen based on sufficient evidence of carcinogenicity from studies in humans." The National Toxicology Program (NTP) is formed from parts of several different US government agencies, including the National Institutes of Health (NIH), the Centers for Disease Control and Prevention (CDC), and the Food and Drug Administration (FDA).

20. Exposure to benzene is a known cause of Multiple Myeloma (MML). The International Agency for Research on Cancer (IARC) is part of the World Health Organization (WHO). One of its goals is to identify the causes of cancer. IARC classifies benzene as "carcinogenic to humans," based on sufficient evidence that benzene causes MML.

21. The U.S. Environmental Protection Agency (EPA) maintains the Integrated Risk Information System (IRIS), an electronic database that contains information on human health effects from exposure to various substances in the environment. The EPA classifies benzene as a known human carcinogen.

22. In 2020, Valisure LLC and ValisureRX, LLC ("Valisure"), an analytical

pharmacy, performed tests on a variety of J&J's, Neutrogena Sunscreen Products. Specifically, Valisure tested numerous lots of J&J's, Neutrogena spray and lotion Sunscreen Products. As a result of this testing, Valisure discovered that certain Sunscreen Products contain benzene, with values ranging from less than 0.1 parts per million ("ppm"), 0.10 ppm to 2 ppm, and more than 2 ppm, and even above 6 ppm. Benzene is not listed as an active or inactive ingredient on any of the labels of Neutrogena's and J&J's Sunscreen Products. Moreover, all of the Sunscreen Products are marketed and advertised in an identical manner — as "Sunscreen."

23. The National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm and defines "skin absorption" as an exposure route.

24. On May 24, 2021, Valisure filed a citizen petition with the Food and Drug Administration ("FDA") requesting that the agency to recall all batches of J&J's, Neutrogena sunscreen products tested which (as tested) contained 0.1 ppm or more of benzene, on the basis that they are adulterated under Section 501 of the FDCA (21 U.S.C. § 351) and misbranded under Section 502 of the FDCA (21 U.S.C. § 352). Neutrogena Beach Defense Aerosol Sunscreen, Neutrogena Cool Dry Sport Aerosol Sunscreen, Neutrogena Invisible Daily Defense Aerosol Sunscreen, and Neutrogena Ultra Sheer Aerosol Sunscreen, among others all tested positive for containing benzene.

25. On July 14, 2021, J&J recalled the following products: Neutrogena Beach Defense Aerosol Sunscreen, Neutrogena Cool Dry Sport Aerosol Sunscreen, Neutrogena Invisible Daily Defense Aerosol Sunscreen, Neutrogena Ultra Sheer Aerosol

Sunscreen.

26. Benzene, a known human carcinogen, is not on the FDA's list of acceptable active or inactive ingredients for Sunscreen Products. Nor is benzene identified as an active or inactive ingredient on any of the J&J's, Neutrogena Sunscreen Products. Nevertheless, J&J proclaim in their advertising that "Neutrogena maintains that the sunscreen ingredients we use are safe and effective . . .," which is a false and misleading statement.

27. Defendants' Neutrogena sunscreens were designed, manufactured, assembled, produced, and distributed in a defective, unmerchantable, and unsuitable condition, by Defendants which caused Plaintiffs' injuries.

28. Errors and negligence in the manufacturing, packaging, shipping, and delivery processes led directly to the presence of benzene in the sunscreen, thereby rendering the Defendants' Neutrogena Sunscreens defective and unreasonably dangerous.

29. Plaintiff's injuries were actually and proximately caused by Defendants' Neutrogena sunscreens defective and unreasonably dangerous condition.

30. Specifically, Defendants' Neutrogena sunscreens suffered from several design defects and were made using substandard and inferior-quality materials and processes.

## COUNT I

## Strict Liability based on Design Defect

31. Plaintiffs hereby reallege each of the preceding paragraphs as though set forth at length herein.

32. Defendants are responsible for testing, developing, designing, manufacturing,

marketing, selling, distributing, and promoting the Neutrogena Sunscreen products.

33. Defendants placed the Neutrogena Sunscreen products into the stream of commerce. The Neutrogena Sunscreen products were expected to and did reach Plaintiffs without substantial change in their condition.

34. The Neutrogena Sunscreen products that Plaintiff used, and that caused the alleged injuries, did not perform as safely as an ordinary consumer would have expected them to perform when used or misused in an intended or reasonably foreseeable way.

35. At the time the Neutrogena Sunscreen products left Defendants' control, they were in a condition not contemplated by Plaintiffs and were unreasonably dangerous and defective.

36. The Neutrogena Sunscreen products were in a defective and unreasonably dangerous condition when they left Defendants' final possession, custody, and control.

37. The risks associated with using the Neutrogena Sunscreen products outweigh any claimed or perceived benefits. There are practicable, feasible and safer alternatives to manufacture sunscreen that do not present the severe health risks that accompany the Neutrogena Sunscreen products.

38. The Neutrogena Sunscreen products failed to perform as safely as expected by Plaintiffs when used in the intended or reasonably foreseeable manner.

39. The Neutrogena Sunscreen products' defective and unreasonably dangerous condition actually and proximately caused injury and damage to Plaintiffs.

## COUNT II

## Strict Liability based on Failure to Warn

40. As Plaintiffs hereby reallege each of the preceding paragraphs as though set forth at length herein.

41. Defendants are responsible for testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting the Neutrogena Sunscreen products.

42. Defendants placed the Neutrogena Sunscreen products into the stream of commerce. The Neutrogena Sunscreen products were expected to and did reach Plaintiff, without substantial change in their condition.

43. The Neutrogena Sunscreen products had potential risks and side effects that were known or knowable to J&J by use of scientific knowledge available at and after the time of design, manufacture, marketing, distribution, and/or sale of the Neutrogena Sunscreen products used by Plaintiff. Defendants knew or should have known of the defective condition, characteristics, and risks associated with the Neutrogena Sunscreen products, as previously set forth herein.

44. The potential risks and side effects associated with the Neutrogena Sunscreen products presented a substantial danger when the sunscreen products are used or misused in an intended or reasonably foreseeable way.

45. Ordinary consumers would not have recognized the potential risks and side effects associated with using the Neutrogena Sunscreen products.

46. When placing the Neutrogena Sunscreen products into the stream of commerce, Defendants failed to provide adequate warnings as to the risks associated with the

product. Defendants failed to warn consumers of the true risks and dangers, and of the symptoms, scope, and severity of the potential side effects of the Neutrogena Sunscreen products.

47. The lack of sufficient instructions or warnings was a substantial factor in causing Plaintiff's injuries.

48. As a direct and proximate result of Defendants' failure to provide adequate warnings in connection with its design, manufacture, marketing, distribution, and/or sale of the Neutrogena Sunscreen products, Plaintiffs suffered injuries herein described.

## COUNT III

## Strict Liability Based on Manufacturing Defect

49. Plaintiffs hereby reallege each of the preceding paragraphs as though set forth at length herein.

50. Defendants are responsible for testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting the Neutrogena Sunscreen products.

51. Defendants placed the Neutrogena Sunscreen products into the stream of commerce. The Neutrogena Sunscreen products were expected to and did reach Plaintiff, without substantial change in their condition.

52. The Neutrogena Sunscreen products that Plaintiff, Taylor Weisleder, used, and that caused his injuries, did not perform as safely as an ordinary consumer would have expected them to perform when used or misused in an intended or reasonably foreseeable way.

53. The Neutrogena Sunscreen products are defective in their manufacture because

their products contained benzene when they left Defendants' final possession, custody, and control.

54. The risks associated with using the Neutrogena Sunscreen products outweigh any claimed or perceived benefits. There are practicable, feasible and safer alternatives to manufacture sunscreen that do not present the severe health risks that accompany the Neutrogena Sunscreen products.

55. The Neutrogena Sunscreen products failed to perform as safely as expected by Plaintiff, Taylor Weisleder, when used in the intended or reasonably foreseeable manner.

56. The Neutrogena Sunscreen products' defective and unreasonably dangerous condition actually and proximately caused injury and damage to Plaintiffs.

## COUNT IV

### Negligence

57. Plaintiffs hereby reallege each of the preceding paragraphs as though set forth at length herein.

58. Defendants are responsible for testing, designing, manufacturing, marketing, selling, distributing, and promoting the Neutrogena Sunscreen products.

59. The Neutrogena Sunscreen products were in a defective and unreasonably dangerous condition when they left Defendants' final possession, custody, and control.

60. Defendants had a duty to properly test, design, manufacture, market, sell, distribute, and promote the Neutrogena Sunscreen products and to ensure the Neutrogena Sunscreen products were not in a defective and unreasonably dangerous condition

when the Neutrogena Sunscreen products left Defendants' final possession, custody, and control.

61. Defendants owed a duty to provide adequate warnings, instructions, and information with the Neutrogena Sunscreen products.

62. Defendants owed a duty Defendants to inspect, test, and assure the quality of the Neutrogena Sunscreen products before the Neutrogena Sunscreen products final possession, custody, and control.

63. Defendants breach of the above duties actually and proximately caused injury and damage to Plaintiffs.

## COUNT V

## Breach Of Implied Warranties

64. Plaintiffs hereby reallege each of the preceding paragraphs as though set forth at length herein.

65. Plaintiff purchased Neutrogena Sunscreen products, containing benzene, and ultimately contracted MML which caused him to suffer a life-altering physical disease.

66. At the time of Plaintiff's use of the Neutrogena Sunscreen products, Defendants were in the business of designing, manufacturing, marketing, distributing, and selling Neutrogena Sunscreen products.

67. Prior to the time that the Neutrogena Sunscreen products were used by Plaintiff, Taylor Weisleder, the Defendants warranted that each of the five affected sunscreen products was free of defects when it sold these products to Plaintiffs.

68. The Neutrogena Sunscreen products were neither safe for its intended use nor of

merchantable quality, as warranted by Defendants when put to its intended use, and it caused severe injuries to Plaintiffs.

69. The average consumer, like each Plaintiff here, would not reasonably anticipate the dangerous and harmful condition of the Neutrogena Sunscreen products, or the physical disease caused by reasonable and foreseeable use.

70. Plaintiffs reasonably relied on the skill, judgment, and implied warranty of in using the Neutrogena Sunscreen.

71. Defendants breached this warranty by, inter alia:

    a. Knowingly concealing the material fact of the benzene contamination in the products, the use of which would increase the consumers' carcinogenic exposure and risk of cancer; and

    b. Making the material misrepresentation of the fact that the five defective products were safe to use, knowing that when applied as direct, use thereof would increase the consumers' carcinogenic exposure and risk of cancer.

72. Defendants knew of this defect and were put on explicit notice of the defects by Valisure following its testing and the May 24, 2021, Petition to the FDA, but continued manufacturing, distributing, marketing, and retailing these five benzene-contaminate sunscreen products to consumers.

73. Defendants breached the implied warranty of merchantability and the implied warranty of fitness, causing Plaintiff, Taylor Weisleder, to suffer severe pain and emotional distress, be subjected to ongoing side effects as a result of the cancer treatments, and incur expenses for doctors, hospitals, nurses, pharmaceuticals, and other reasonably required and medically necessary supplies and services.

74. As a result of the aforementioned breaches of implied warranties by Defendants, Plaintiffs suffered injuries and damages as alleged herein.

## COUNT VI

### Breach of Express Warranties

75. Plaintiffs hereby reallege each of the preceding paragraphs as though set forth at length herein.

76. At all times herein mentioned, Defendants expressly warranted to Plaintiffs, by and through statements made by Defendants or its authorized agents or sales representatives, orally and in publications, package inserts, and other written materials intended for the general public, that the Neutrogena Sunscreen was safe, effective, fit, and proper for its intended use.

77. In utilizing the Neutrogena Sunscreen products, Plaintiffs reasonably relied on the skill, judgment, representations, and foregoing express warranties of Defendants.

78. Said warranties were false in that the aforementioned Neutrogena Sunscreen products were not safe and were unfit for the users for which they were intended.

79. By selling, delivering and/or distributing the defective product to Plaintiffs, Defendants breached their express warranties.

80. As a direct and proximate result of Defendants' breach of their express warranties, Plaintiffs suffered the injuries and damages alleged herein.

## COUNT VII

### Loss of Consortium

81. Plaintiff, Michelle Weisleder, hereby realleges each of the preceding paragraphs as though set forth at length herein.

82. During all relevant times referenced herein, the Plaintiffs, Taylor Weisleder and Michelle Weisleder, were lawfully married and residing together as husband and wife.

83. Plaintiff, Taylor Weisleder, sustained severe and permanent injuries as a direct and proximate result of the negligence of the Defendants.

84. As a direct and proximate result of the injuries sustained by Plaintiff, Taylor Weisleder, the Plaintiff, Michelle Weisleder, suffered and continues to suffer a loss of consortium, which includes the loss of companionship, affection, solace, comfort, society, assistance, and conjugal life, as well as the right to the company, cooperation, and aid of Taylor Weisleder.

85. The loss of consortium suffered by Plaintiff, Michelle Weisleder, is a direct injury to her, though derivative in the sense that it arises from the injury to Plaintiff, Taylor Weisleder.

86. Plaintiff, Michelle Weisleder, is entitled to recover damages for the loss of consortium as a result of the injuries sustained by Plaintiff, Taylor Weisleder, due to the Defendants' above conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, pray for judgment against Defendants, KENVUE, ABC Corporations, 1-5, XYZ Partnerships 1-5, and John Does 1-5, jointly and severally, on all causes of action, for all damages allowed by law, including, but not limited to:

1. Compensatory damages;

2. Awarding pre-judgment and post-judgment interest to Plaintiffs;

3. Awarding all statutory damages and relief to Plaintiffs;

4. Awarding the costs and the expenses of this litigation to Plaintiffs;

5. Awarding reasonable attorneys' fees and costs to Plaintiffs as provided by law;

6. Awarding punitive damages, where appropriate, to the Plaintiff;

7. Granting Plaintiffs equitable relief in the nature of disgorgement;

8. Restitution to Plaintiffs to remedy J&J's unjust enrichment; and

9. Granting all such other relief as the Court deems necessary, just, and proper.

**RESPECTFULLY SUBMITTED** this 15th day of July, 2024.

_____
Lawrence W. Luttrell, Esq.
Law Offices of Lawrence W. Luttrell, P.C.
2137 State Route 35, 3rd Floor
Holmdel, New Jersey 07733
larry@lwlpc.com
(732) 872-6900
*Attorneys for the Plaintiffs*

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all issues so triable in the above matter.

**RESPECTFULLY SUBMITTED** this 15th day of July, 2024.

_____
Lawrence W. Luttrell, Esq.
Law Offices of Lawrence W. Luttrell, P.C.
2137 State Route 35, 3rd Floor
Holmdel, New Jersey 07733
larry@lwlpc.com
(732) 872-6900
*Attorneys for the Plaintiffs*